# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:05CV148-C

| | |
|---|---|
| ANDREW MARK BREEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| MECKLENBURG COUNTY, JAMES PENDERGRAPH, in his official and individual capacities, JOHN DOE I, JOHN DOE II, JOHN DOE III, JOHN DOE IV, and JANE DOE, in their individual capacities, PRISON HEALTH SERVICES, INC., and PEERLESS INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND RECOMMENDATION**

**THIS MATTER** is before the Court on the "Motion to Dismiss . . ." and Supporting Memorandum of the Defendants Mecklenburg County, James Pendergraph, and Peerless Insurance Company ("County Defendants") (document #6) filed on April 28, 2005. The Plaintiff filed his "Memorandum of Law in Opposition . . ." (document #8) on May 31, 2005, and the County Defendants filed their "Reply . . ." on June 6, 2005. In addition, the Defendant Prison Health Services, Inc. filed its "Motion to Dismiss . . ." (document #7) on May 19, 2005. The Plaintiff filed his "Memorandum of Law in Opposition . . ." (document #10) on June 13, 2005, and, Prison Health Services, Inc. filed its "Reply . . ." (document # 11) on June 23, 2005.

On April 18, 2006, this matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the Defendants' Motions are now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the County Defendants' Motion to Dismiss be <u>granted in part</u> and <u>denied in part</u>, and that the Prison Health Service Inc.'s Motion to Dismiss be <u>denied</u>, as discussed below.

## I. <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

This is an action seeking damages pursuant to 42 U.S.C. § 1983, and N.C. Gen. Stat. §§ 162-55 and 58-76-5, including punitive damages. The Plaintiff essentially alleges that he was deprived of his right to adequate medical care while being held as a pretrial detainee at the Mecklenburg County Jail.

Accepting the allegations of the Complaint as true, the Plaintiff, a 51-year-old at the time of the incident, was diagnosed with Parkinson's disease in 1992. The Plaintiff takes several prescribed medications four times per day to control the symptoms of Parkinson's disease.

On May 10, 2003, at approximately 12:45 a.m., the Plaintiff was taken into custody at Jail Central in Mecklenburg County. At that time, his medications were confiscated from him by a jail employee (named in the Complaint as "John Doe I"). According to John Doe I, Jail Central policy required him to confiscate the Plaintiff's medications even though the Plaintiff informed him that he has Parkinson's disease and would suffer "serious and debilitating symptoms" without his medications.

Next, the Plaintiff alleges that he was placed in a holding cell where he began to suffer symptoms of Parkinson's disease. He asked another jail employee for his medications (named in the Complaint as "John Doe II"), and again was denied access because providing medications at that stage of the proceedings was contrary to Jail Central policy. The Plaintiff was then moved to a POD,

where he asked yet another jail employee (named in the Complaint as "John Doe III") for his medications, informing John Doe III "that he was totally dependent upon his medications and that without his medications he suffers serious and debilitating symptoms and that he was suffering from such symptoms." John Doe III reportedly told the Plaintiff that he would look into getting his medications for him, but that he thought Jail Central policy prevented the Plaintiff from receiving confiscated medications. The Plaintiff alleges that he asked John Doe III for his medications several times, but never received them.

Later that night the Plaintiff alleges that he asked yet another jail employee (named in the Complaint as "John Doe IV") for his medications several times. He was again refused, and further alleges that on one occasion, John Doe IV responded in an "intimidating and threatening manner." The next day the Plaintiff again asked John Doe III for his medications, who by that time had checked and confirmed that it was against Jail Central policy to provide an inmate with confiscated medications. And, finally, later that night the Plaintiff alleges that he asked another jail employee (named in the Complaint as "Jane Doe") for his medications but never received them despite Jane Doe's assertions that she would look into the matter.

The Plaintiff alleges, finally, that there were others (outside the jail) who were also informing jail personnel of his need for the medications, that he endured "physical suffering and harm, including, but not limited to, fainting and falling down," and that after his release on May 12, 2003, he could not walk without support for two weeks.

The Plaintiff seeks to proceed against Mecklenburg County, Sheriff Pendergraph (in both his individual and official capacities), Prison Health Services, Inc., and each of the Doe Defendants (in their individual capacities) pursuant to 42 U.S.C. § 1983. The theory of liability is that the County has delegated its statutory responsibility and final policy making authority for the provision of

medical care to Jail Central inmates to Sheriff Pendergraph, and that Sheriff Pendergraph then delegated his authority to Prison Health Services, Inc. Thus, the Plaintiff contends that any decisions made by Prison Health Services, Inc. are imputed to Mecklenburg County and Sheriff Pendergraph. The Plaintiff also asserts that not providing confiscated medications to inmates is the official policy of Mecklenburg County and Sheriff Pendergraph, that they knew or should have known of this policy, and that Prison Health Services, Inc. has derivative liability for any constitutional violation which has occurred. Finally, the Doe Defendants are allegedly liable because a reasonable person would have known that withholding the Plaintiff's medications denied him his constitutional right to adequate medical care.

The Plaintiff also contends that Sheriff Pendergraph, through respondeat superior, and the Doe Defendants, are liable pursuant to N.C. Gen. Stat. § 162-55, because they caused a wrong or injury to him. Further, the Plaintiff contends that Peerless Insurance Company ("Peerless") and Sheriff Pendergraph are liable pursuant to N.C. Gen. Stat. § 58-76-5, because the Plaintiff was injured by Sheriff Pendergraph's neglect, misconduct, and/or misbehavior in office. And, finally, the Plaintiff seeks punitive damages from the Doe Defendants for their conscious and intentional disregard of his well established rights.

As noted above, both Motions to Dismiss have been fully briefed and are, therefore, ripe for determination.

## II. DISCUSSION

### A. Standard of Review

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

4

applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 828 (1993), citing 5A C. Wright & A. Miller, Fed. Practice and Procedure §1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [the subject] claim." McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 328 (4th Cir. 1996) (en banc), citing Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989); and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969). Accord Republican Party of NC, 980 F.2d at 952 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

**B. County Defendants' Motion to Dismiss**

**1. Mecklenburg County Liability**

The first issue raised by the County Defendants' Motion to Dismiss is whether Mecklenburg County is a proper defendant in this action at all. They argue that as a matter of law, it is the Sheriff rather than the County which is legally responsible for the care of county jail inmates. There is a long line of cases directly on point, that is, cases which hold that a sheriff is the sole law enforcement

5

policymaker in his office, that a county has no control over a sheriff's law enforcement policies and activities, and consequently, that a county cannot be held liable for constitutional or other civil wrongs committed by a sheriff or his employees. See, e.g., Knight v. Vernon, 214 F.3d 544, 552-53 (4th Cir. 2000) (in § 1983 suit alleging that sheriff violated plaintiff's First Amendment rights, the county was not a proper party); Little v. Smith, 114 F. Supp. 2d 437, 446 (W.D.N.C. 2000) (Anson County not a proper defendant to § 1983 action alleging excessive force and improper training against Sheriff of Anson County and his deputies); and Clark v. Burke County, 117 N.C.App. 80, 85, 450 S.E.2d 747, 749 (1994) ("any injury resulting from [the deputy sheriff's] actions ... cannot result in liability for Burke County," affirming summary judgment for the county).

As Mecklenburg County also notes, consistent with the cases it cites, North Carolina law clearly provides that the "sheriff shall have the care and custody of the jail in his county." N.C. Gen. Stat. § 162-22. As Plaintiff repeatedly states in his Complaint, the jail employees were following Jail Central policy when they confiscated and refused to bring him his medications. Confiscating medications as inmates are brought into the jail is plainly a law enforcement policy – albeit one that impacts the medical care of inmates – which rests squarely in the Sheriff's domain.

Accordingly, as to Mecklenburg County only, the undersigned will respectfully recommend that the County Defendants' Motion to Dismiss be granted.

## 2. Fourteenth Amendment Claim

The County Defendants also argue that the Plaintiff has not asserted facts which amount to "a serious medical emergency," and therefore the Complaint should be dismissed.

The Supreme Court has not yet decided what standard governs denial of medical care claims asserted by pre-trial detainees, whose claims arise under the Fourteenth Amendment rather than the Eighth Amendment, thus far observing only that the Fourteenth Amendment rights of pre-trial

6

detainees "are at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983). Accord Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992).

The Fourth Circuit, however, has concluded that § 1983 denial of medical care claims asserted by pre-trial detainees are governed by the deliberate indifference standard for convicted prisoners set out in Estelle v. Gamble, 429 U.S. 97 (1976). See, e.g., Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (applying deliberate indifference standard to pretrial detainee's claim that he was denied needed medical treatment), cert. denied, 529 U.S. 1067 (2000). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." Id. Indeed, "[d]eliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mount Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001).

Taking the Plaintiff's allegations as true at this early stage of the proceedings, as we must, the Plaintiff has satisfied the "threshold question," that is, he has pled a colorable claim that the remaining Defendants showed deliberate indifference to a serious need for medical care. The Plaintiff clearly alleges that he made the Defendants aware that he has Parkinson's disease and took the prescribed medications to control the otherwise debilitating symptoms of this very serious disease. Nor is there any evidence before the Court at this point which might cast doubt on the Plaintiff's allegations that he repeatedly requested that he be given his medications, that his medical condition is "serious," or that he continued to suffer the effects of missing his medications for two weeks after his release. In short, although discovery may indeed reveal evidence to the contrary, at this point in the proceedings the Plaintiff has sufficiently pled deliberate indifference claims against the remaining defendants.

Accordingly, the undersigned will respectfully recommend that the County Defendants' Motion to Dismiss be <u>denied</u> as to the Sheriff and Peerless Insurance Company.

### C. Prison Health Defendant's Motion to Dismiss

For the reasons stated in Section B.2, <u>supra</u>, the undersigned will also respectfully recommend that the Prison Health Services, Inc.'s Motion to Dismiss be <u>denied</u>.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the County Defendants' Motion to Dismiss (document #6) be **GRANTED** as to Mecklenburg County only and **DENIED** as to all other Defendants, and that Prison Health Services Inc.'s Motion to Dismiss (document #7) also be **DENIED**.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989); <u>United States v. Rice</u>, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to <u>de novo</u> review by the district court. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder</u>, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. <u>Diamond</u>, 416 F.3d at 316; <u>Wells</u>, 109 F.3d at 201; <u>Page</u>, 337 F.3d at 416 n.3; <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: April 28, 2006

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge